USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/30/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEFINA S., DEAJA D., CYNTHIA Q.,
SHANTELL S., and BIANCA M., on behalf of
themselves and all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

1:17-CV-7661 (VEC)

## STIPULATION OF SETTLEMENT

WHEREAS, on October 6, 2017, Named Plaintiffs Josefina S., Deaja D., Cynthia Q., Shantell S., and Bianca M. ("Named Plaintiffs") filed this class action on behalf of themselves and similarly situated individuals who have been or will be investigated for child abuse, maltreatment, or neglect by the New York City Administration for Children's Services ("ACS"), s/h/a Defendant The City of New York ("City" or "Defendant");

WHEREAS the Named Plaintiffs alleged that ACS violated and continues to violate the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*., ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by discriminating against parents with actual or perceived intellectual disabilities; failing to provide services, programs, and activities tailored to their needs; and failing to provide reasonable accommodations, as set forth in their complaint filed October 6, 2017 (the "Complaint");

1

WHEREAS, on January 2, 2018, the City filed its answer denying all liability for the claims asserted against it in the Complaint, as well as those factual allegations set forth therein from which such claims are alleged to have arisen;

WHEREAS, on September 28, 2018, Named Plaintiffs filed a motion for class certification;

WHEREAS, on February 8, 2019, the City filed its opposition to the motion for class certification;

WHEREAS, on September 24, 2019, the Court administratively denied the motion for class certification while the Parties engaged in settlement discussions, with leave to refile if necessary;

WHEREAS the Parties have engaged in extensive settlement discussions and arm's-length negotiations, and have reached an agreement on the terms of a settlement, as set forth below;

WHEREAS this Stipulation sets forth the terms of the settlement agreement finally reached between the Parties;

WHEREAS ACS recognizes its obligations under the ADA and other applicable laws not to discriminate against parents with intellectual or developmental disabilities;

WHEREAS ACS recognizes its obligation to offer Class Members accommodations tailored to their particular needs to prevent removal if possible, or facilitate reunification as soon as possible;

WHEREAS ACS recognizes that Class Members are entitled to receive Reasonable Accommodations where needed and services tailored to their particular needs;

WHEREAS ACS will continue to follow its current grievance process contained in its ACS ADA Procedure for Class Members to request Reasonable Accommodations;

WHEREAS ACS shall not exclude from or deny the benefits of its services, programs, or activities to a Class Member on the basis of their actual or suspected intellectual disability.  ACS will also not exclude or deny equal services, programs, or activities to a Class Member or other individual because of their relationship or association with a Class Member; AND

WHEREAS ACS recognizes that any actions taken on account of a parent having an actual or suspected intellectual disability must be based on actual risks and not mere speculations, generalizations, or stereotypes about individuals with intellectual disabilities.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Named Plaintiffs on behalf of a class as defined below and the Defendant that, subject to Court approval, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, in consideration for the promises and covenants set forth in this Stipulation and upon entry by the Court of a Final Approval Order, the Action shall be settled and compromised upon the terms and conditions contained in this Stipulation.

## I. DEFINITIONS

The following terms have the meanings set forth below, unless provided otherwise in this Stipulation:

1. "Accelerated Safety Analysis Protocol" or "ASAP" means a case review tool utilized by Division of Child Protection-Quality Assurance ("QA") staff on cases between day 8 and day 20 of an active child protective investigation.  Case selection is generated daily using an algorithm based on a predictive risk model.

3

2.      "ACS ADA Procedure" means the ADA procedure, or any superseding policy or procedure, setting forth ACS's and Agencies' responsibility to ensure that clients with disabilities are provided reasonable accommodations, and guidance on the procedures required by the ADA to comply with that responsibility, currently available at https://www1.nyc.gov/assets/acs/policies/init/2011/B.pdf.

3.      "ACS Case Number" means a unique identifying number assigned by ACS to each case.

4.      "Agency" means an ACS-contracted entity responsible for the provision of services addressing the needs of children and caretakers involved in ACS protective, prevention (including homemaking), or foster care services.

5.      "Article 10 Proceeding" means a proceeding in Family Court pursuant to FCA § 1011 *et. seq.*, in which ACS files a petition alleging that a child has been or is in danger of being neglected and/or abused.

6.      "Care Manager" means a professional who provides care management and coordinates services for eligible individuals. This could include both a care manager who works for a DOH Health Home or an OPWDD Care Coordination Organization.

7.      "Case Planner" means the caseworker with the primary responsibility for providing or coordinating and evaluating the provision of services to the family as set forth in 18 N.Y.C.R.R. § 428.2.

8.      "Child and Family Specialist" or "CFS" means an employee in ACS who facilitates Family Team Conferences, among other responsibilities.

9.  "Child Protective Specialist" or "CPS" means an ACS caseworker who responds to reports of abuse and maltreatment, and also includes: Family Services Unit CPS and Family Preservation Program CPS.

10.  "CPS Team" consists of (in supervisory order) the Child Protective Specialist, the Child Protective Specialist Supervisor, and the Child Protective Manager.

11.  "Class" has the meaning provided in Paragraph 54.

12.  "Class Member" means any member of the Class.

13.  "Conference Facilitator" means the ACS employee or Agency staff who leads Family Team Conferences, or in the case of Multidisciplinary Team Meetings, the ACS employee or Agency staff responsible for leading the Multidisciplinary Team Meeting.  The Conference Facilitator attempts to guide the participants to consensus around decisions during the conference; and may also act as the Conference Scheduler in certain circumstances.

14.  "Conference Scheduler," for purposes of this Stipulation and regardless of any ACS or Agency title, means the ACS employee or Agency staff responsible for scheduling Family Team Conferences or, in the case of Multidisciplinary Team Meetings, the ACS employee responsible for scheduling the Multidisciplinary Team Meeting.

15.  "CONNECTIONS" or "CNNX" means the statewide automated child welfare information system implemented and administered by OCFS pursuant to Social Services Law § 446.  The CONNECTIONS system contains, but is not limited to, those data elements required by applicable State and federal statutes and regulations, relating to the provision of child welfare services including foster care, adoption assistance, adoption services, preventive services, child protective services, and other family preservation and family support services.

5

16.     "CONNECTIONS *Josefina S.* Indicator" means the new field that the Parties anticipate will be added in CONNECTIONS by OCFS, as described at Paragraph 59 below, that permits ACS and its Provider Agencies, for those cases that are required to be documented in CONNECTIONS, to identify parents with actual or suspected Intellectual/Developmental Disabilities or who may benefit from referral to the Parenting Skills Training Program. For the avoidance of doubt, this Indicator is different from the existing indicators for "Development Disabled – Diagnosed" or "Intellectual Disability – Diagnosed."

17.     "Continuing Jurisdiction Period" means the period of time set forth in Paragraph 123 during which the Court has continuing jurisdiction over enforcement of this Stipulation.

18.     "Developmental Disabilities Unit" or "DDU" means, for purposes of this Stipulation, the unit within ACS that provides technical and other assistance in cases involving I/DD children, youth, and/or parents in the protective, prevention (including homemaking), or foster care phases of their ACS involvement.

19.     "Division of Child Protection" means the division within ACS that investigates all allegations of child abuse or maltreatment that the City receives from the New York Statewide Central Register of Child Abuse and Maltreatment.

20.     "Division of Family Permanency Services" means the division within ACS that oversees that appropriate services are provided to children in foster care by offering foster care provider agencies technical assistance and services support.  Family Permanency Services staff offer guidance to provider agencies on child welfare policies and procedures to improve service delivery and achieve safety, permanency, and well-being for children in foster care.

21.     "Division of Prevention Services" means the division within ACS that oversees the delivery of preventive services (also known as prevention), including homemaking services, for children and families in their community through contracted agencies.

22.     "DOH Health Homes" means the program that coordinates care for Medicaid eligible individuals with chronic health problems.

23.     "Effective Date" means the date the Parties' obligations, rights, and responsibilities under this Stipulation shall commence, as provided in Paragraph 121.

24.     "Family Assessment Service Plan" or "Service Plan" means the assessment and analysis of the family members' strengths, need and problems, and the plan for services, as required by 18 NYCRR Part 428.

25.     "Family Court" means New York City Family Courts.

26.     "Family Court Legal Services" or "FCLS" means the division within ACS that is responsible for representing ACS in child welfare and juvenile justice proceedings in Family Court.

27.     "Family Preservation Program CPS" means any CPS that engages families with children at risk of removal from the home / placement in foster care with safety intervention and support plans.

28.     "Family Services Unit CPS" means any CPS that assesses, engages with, and links families who have been ordered receive court ordered supervision with appropriate supportive service intervention.

29.     "Family Team Conference" or "FTC" means a conference that is part of a process for engaging family, children (10 years of age or older), ACS staff, foster care and prevention services provider agencies staff, service providers, community members, foster parents and

7

relative caregivers in critical decisions related to child safety, risk, placement (preservation), wellbeing and permanence.

30.    "Family Time" describes productive, positive visits between parents and children who have been removed from their parent's care.  Quality family time is crucial to timely reunification and permanency.

31.    "Foster Care Provider Agency" or "Provider Agency" means an agency authorized pursuant to Social Services Law § 371(10)(a) that contracts with ACS to provide care to children remanded to, or placed in, the custody of the Commissioner of ACS.

32.    "Homemaking Services Agency" means an ACS contracted specialized prevention services provider who deploys paraprofessionals into homes to teach and train parents or guardians in child care and home management skills to maintain normal household operations during periods of stress in family function to promote independence from the child welfare continuum.

33.    "I/DD" means an intellectual or developmental disability.

34.    "Initial Child Safety Conference" or "ICSC" means a team meeting held between the family, their family and community supports and ACS staff to discuss safety and Service Planning with a goal of joint decision-making around safety and Service Planning.

35.    "Institutional Advocacy Organizations" means Brooklyn Defender Services, Bronx Defenders, Center for Family Representation, Neighborhood Defender Service of Harlem, and any other non-profit legal services organizations that receives funding from the New York City Mayor's Office for Criminal Justice in order to represent parents in Article 10 proceedings in New York City.

36. "Local Protocol," for purposes of this Stipulation, means an ACS-specific template in CONNECTIONS for recording information required by ACS policy and procedures for investigation and assessment.

37. "Monitoring Period" means each successive six-month period starting on the Effective Date and extending throughout the duration of the Continuing Jurisdiction Period. At the end of each Monitoring Period, ACS will provide Monitoring Reports, as described at Paragraphs 105-115 below.

38. "Multidisciplinary Team" means a team of professionals including Case Planners or Child Protective Specialists and representatives of different disciplines that coordinate in a collaborative way to promote a more comprehensive investigative approach and Service Planning to family preservation and find appropriate services and resources for families to avert children being placed into foster care when safe to do so.

39. "Multidisciplinary Team Meeting" means a meeting that occurs as needed, with the goal of coordinating services, involving members of the Multidisciplinary Team.

40. "OCFS" means the New York State Office of Children and Family Services.

41. "Office of Child and Family Health" or "OCFH" means the unit within ACS that delivers direct medical services to children entering foster care and verifies that the health care provided is comprehensive and appropriate, and includes the DDU, Psychiatry and Behavioral Health Unit, Pre-Placement Medical Services Unit, Clinical Programs and Services Unit, and the Mental Health Coordination Unit, among others.

42. "Office for People with Developmental Disabilities" or "OPWDD" means the New York State agency responsible for coordinating services for New Yorkers with developmental disabilities, including intellectual disabilities, cerebral palsy, Down syndrome, autism spectrum

disorders, Prader-Willi syndrome and other neurological impairments.  It provides services directly and through a network of approximately 500 nonprofit service providing agencies.

43.   "PAMS" or "Provider Agency Measurement System" means a semiannual case review audit of a statistically valid sample of randomly selected open cases from each Provider Agency using a well-tested tool with more than 100 questions assessing compliance with programmatic standards and quality of case practice.

44.   "PAMS/ZBR Sample" means those cases involving Class Members that are, through the standard PAMS and ZBR random sampling methodology, included in the case sample subject to the PAMS and ZBR case review audits.

45.   "Parenting Skills Class" means individual or group classes of approximately five to ten parents with either suspected or confirmed I/DD, conducted by instructors with training and experience working with individuals with I/DD.

46.   "Parenting Skills Training Program" means a program that includes (a) the Parenting Skills Class; (b) one-on-one parenting skills coaching, including observation of parent and child together where possible; and (c) service coordination and linkage to community-based resources, as needed.

47.   "Preventive (or Prevention) Services Agency" means an agency authorized pursuant to Social Services Law § 409-a(4) that contracts with ACS to provide Preventive Services or Prevention Services.

48.   "Preventive Services" or "Prevention Services" are supportive and rehabilitative services that are provided to eligible children and their families to help avoid placement of a child in foster care or help reunify a child who has been placed in foster care with their family, as described in Social Services Law § 409.

10

49.     "Reasonable Accommodation" shall have the meaning set forth in the ADA, 42 U.S.C. § 12111.

50.     "Risk Assessment Profile" or "RAP," as defined by the New York State Office of Child and Family Services, means an evidence-based assessment instrument that classifies cases into four risk categories based upon ACS's assessment of the probability of future child abuse or maltreatment, entered into CONNECTIONS during each CPS report investigation, whether the report is "indicated" or "unfounded."

51.     "TPR Petition" or "Petition to Terminate Parental Rights" means a petition brought in Family Court pursuant to Social Services Law § 384-b by ACS, or by a foster care provider on behalf of ACS, to legally terminate a parent's rights to custody and guardianship of their child.

52.     "Workforce Institute" means an ACS training institute for ACS and Agency staff and supervisors responsible for providing direct services to ACS-involved families.

53.     "Zone Based Review" or "ZBR" means a retrospective review of randomly selected, closed DCP investigations, assessing compliance and quality of practice in a representative sample from each of the DCP zones and the Office of Special Investigations ("OSI"), over an 18-month cycle.

## II.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

54.     Solely for purposes of this Stipulation, the Parties agree to certification of a settlement class under Fed. R. Civ. P. 23(b)(2) consisting of:

> **All parents with actual or suspected intellectual or developmental disabilities who have been or will be reported to the New York Statewide Central Register of Child Abuse and Maltreatment, and who have been or will be investigated by ACS pursuant to such report.**

55.     Subject to Court approval, the Parties agree to the appointment of one or more of the Named Plaintiffs as the class representatives.

11

56.     Subject to Court approval, the Parties agree to the appointment of the New York Legal Assistance Group and Davis Polk & Wardwell LLP as Class Counsel.

## III.    RELIEF TO THE CLASS

### A.    Identification of Class Members

57.     ACS shall use a Local Protocol to help the interviewer identify potential Class Members. The Local Protocol shall have content and a level of detail similar to the template document provided to Class Counsel in March 2023, and shall include questions designed to, *inter alia*, screen for I/DD, indicate whether referral to DDU has or should be made, and after consultation with DDU, identify what services and supports, if any, might be appropriate.

58.     A Child Protective Specialist shall document assessments, including a parent's suspected or actual I/DD, in CONNECTIONS in all child protective investigations prior to initiating an Article 10 Proceeding, unless safety concerns for the child require immediate child protective measures prior to completing the assessments.

59.     The Parties understand that OCFS has agreed to implement the CONNECTIONS *Josefina S.* Indicator on an expedited basis.  As of the date this Stipulation is executed, the Parties understand that the Indicator is expected to be implemented in the first quarter of 2024.

60.     Within one month after the new CONNECTIONS *Josefina S.* Indicator becomes available, or one month after the Effective Date, whichever is later, ACS will distribute a Bulletin via email to all active relevant staff, both within ACS and at all provider agencies, announcing the Indicator and including the following guidance:

  a.     Staff who have a case that is documented in CONNECTIONS and involves a Class Member shall review CONNECTIONS to see if the *Josefina S.* indicator has been checked and, if not, place a check in the Indicator checkbox;

b.   Staff will be reminded that checking the CONNECTIONS *Josefina S.* Indicator indicates that a parent has actual or suspected I/DD and is designated as a *Josefina* Class Member for whom additional procedural steps may be required; and additional services, including referral to the Parenting Skills Training Program, may be appropriate.  The reminder will include information about how to refer parents to that program or a link to that information;

c.   Staff will be reminded that, for those cases required to be documented in CONNECTIONS, they should check the CONNECTIONS *Josefina S.* Indicator whenever they first suspect or confirm that a parent has I/DD, including at the investigative stage of a case or when the staff are newly assigned to an existing case, if the CONNECTIONS *Josefina S.* Indicator has not already been checked;

d.   Staff will be reminded that a Class Member may require reasonable accommodations and be provided a link to the ACS ADA Procedure;

e.   Staff will be reminded that the DDU has expertise in working with parents with intellectual and developmental disabilities, and provided with contact information for the DDU or a link providing more information about DDU;

f.   Staff will be reminded that DDU provides monthly information sessions for staff about working with parents with intellectual and developmental disabilities and information about how to register and attend those sessions;

g.   Staff will be reminded of the compulsory training provided about parents with I/DD, and will be mandated to take that training on an expedited basis

if they are currently assigned a case involving a parent with actual or suspected I/DD;

h.    Staff will be reminded that DDU must be invited to Family Team Conferences, Initial Child Safety Conferences, and Multidisciplinary Team Meetings and may, depending on circumstances, attend those meetings/conferences; and

i.    Staff will be reminded of the additional steps that will be required before removal of a child or the filing of a petition to terminate parental rights, as described in Paragraphs 69-72 below.

61.    Whenever (1) the CONNECTIONS *Josefina S.* Indicator is selected in a CONNECTIONS case file, or (2) a new Child Protective Specialist or Case Planner is assigned to a case in which the CONNECTIONS *Josefina S.* Indicator has already been checked, a communication shall be sent within 17 business days to the assigned Child Protective Specialist and/or Case Planner and their supervisor. The communication shall contain in the subject line the case identification number and the name of the parent. The communication shall contain, at a minimum, information mandated for the Bulletin described in Paragraph 60(b), (d)-(i).

62.    ACS will implement a process by which attorneys from Legal Services Providers may notify ACS of the identity of possible Class Members, for example, by emailing a designated individual at FCLS.

**B.    Specialized Protocols for Class Members**

63.    Whenever a Conference Scheduler schedules a Multidisciplinary Team Meeting for a parent who is listed in CONNECTIONS as having actual or suspected I/DD, the Conference Scheduler shall notify DDU of the date, location, and subject of the meeting.

14

64.     At least one staff member from the DDU shall attend every Multidisciplinary Team Meeting involving a parent who is documented in CONNECTIONS as having actual or suspected I/DD, unless DDU attendance is not possible.  In the event that DDU attendance at such Multidisciplinary Team Meeting is not possible, the reason shall be documented.  Best efforts shall be made to schedule the Multidisciplinary Team Meetings at times when at least one DDU staff member has availability.

65.     During those meetings, DDU will provide resource information and guidance so that appropriate services are being offered and/or provided to the parent who is identified as having actual or suspected I/DD; Provider Agencies, Care Managers, or representatives of DOH Health Homes, as applicable, are reaching out to the parent, as necessary, to facilitate attendance at referred services; and Provider Agencies, Care Managers, or representatives of DOH Health Homes, as applicable, are encouraged, when appropriate, to consider other resources that the parent may need.  The DDU's attendee will also inform all Multidisciplinary Team members of resources available to the Class Member.

66.     In the event that a DDU staff member is unable to attend a Multidisciplinary Team Meeting, the DDU staff member will review notes from the meeting as soon thereafter as practicable and provide information and guidance to the Child Protective Specialist or Case Planner.

67.     Whenever a Family Team Conference is scheduled for a parent with actual or suspected I/DD, DDU shall be notified of the date, location, and subject of the conference.

68.     DDU will attend all FTCs for Class Members with at least one child in foster care unless they are unable to attend even after best efforts have been made to schedule the meeting at a time when at least one DDU staff member has availability.  DDU shall be notified of all FTCs

15

for Class Members and nothing in this Stipulation shall prevent DDU from attending additional FTCs whenever DDU chooses to do so.

69.     When a Child Protective Specialist preliminarily assesses that separation of the child from the Class Member may be needed to keep the child safe, the CPS team will hold an Initial Child Safety Conference, either prior to removal when deemed safe to do so, or after an emergency removal, which will include representatives from the DDU to support the needs of the Class Member, unless representatives from the DDU are unable to attend even after best efforts have been made to schedule the meeting at a time when at least one DDU staff member has availability.  The objective of the ICSC is to determine the most appropriate intervention that will keep a child safe, while involving and empowering the Class Member in the decision making process.  The Conference Facilitator will document assessments and plans derived from the ICSC on the ICSC summary form that is provided to FCLS for review when the consensus after the ICSC is removal.  The DDU representative will support the Service Plan by making recommendations for services to support the Class Member.

70.     The CPS Team will confer with the DCP Borough Deputy Director or, in the event that the Deputy Director is unavailable, his/her/their designee, when an assessment has been made to remove a child from a Class Member based on concerns of immediate danger and imminent risk of harm.  The Deputy Director or designee will then decide whether removal is required.  If the parent/caretaker is identified as having actual or suspected I/DD, the CPS will document such identification in CONNECTIONS.

71.     In any Article 10 proceeding, before FCLS seeks a court order removing a child from the custody of a Class Member, the attorney representing ACS must obtain approval from a FCLS Borough Chief or, in the event that the Borough Chief is unavailable, his/her/their designee.

16

These steps must be documented in the FCLS legal file for that case. If the request for removal or exclusion is not approved by FCLS or the court denies the application for a removal or exclusionary order, but ACS does not close the investigation, ACS must promptly convene a meeting with the Class Member to discuss a Service Plan and any court orders if the child is released to a parent with court ordered supervision during the pendency of the Article 10 proceeding, and to discuss how the concerns that resulted in the recommendation for the request for the removal order, if any such concerns remain, may be mitigated, including through the provision of appropriate services for that Class Member. DCP will document in CONNECTIONS this meeting and any subsequent meetings or conferences arising out of it.

72.     Before a Foster Care Provider Agency or ACS files a TPR Petition, the Foster Care Provider Agency must have attended a FTC with a DDU representative, unless representatives from the DDU are unable to attend even after best efforts have been made to schedule the meeting at a time when at least one DDU staff member has availability, except (a) where there is a court order directing the Foster Care Provider Agency to file a TPR Petition; (b) where there is a court order finding that reasonable efforts to preserve the family are not required; (c) where the TPR Petition is based on abandonment of the child by the parent for the period of six months immediately preceding the date on which the TPR Petition is filed in Court, pursuant to SSL § 384-b(4)(b); or (d) where, at the time of filing the TPR Petition, the whereabouts of the Class Member are unknown.

### C.     Parenting Skills Training Program

73.     ACS shall make the Parenting Skills Training Program available to Class Members.

74.     If ACS chooses to provide the Parenting Skills Training Program through contractors, ACS shall maintain these or substantially similar contracts with these or other contractors throughout the Continuing Jurisdiction Period.

17

75.     Any individual referring a Class Member to the Parenting Skills Training Program shall provide such information as the individual may have regarding the basis for their belief that the parent has an intellectual or developmental disability and the specific parenting issues this raises, if any (i.e. the particular parenting need that is not being met as a result of actual or suspected I/DD).  DDU shall direct individuals referring Class Members to the Parenting Skills Training Program to use a referral form which solicits this information.

76.     If the number of Class Members who are referred to the Parenting Skills Training Program exceeds the capacity of the Program, ACS or the contractor(s) shall maintain a wait list. The wait list shall note how long each parent has been waiting for (a) the group Parenting Skills Class, (b) one-on-one parenting coaching, and (c) service coordination based upon the individualized needs of the parent to link the parents to supports and services as needed, potentially including assistance with OPWDD eligibility and community services such as evaluations, mental health services, education supports, housing, benefits.

77.     The wait list for the Parenting Skills Training Program shall include the name of the referred parent, the date the parent was referred to the program, who referred the parent to the program, their affiliated agency, and the approximate date that the parent is anticipated to be able to complete the intake into the Parenting Skills Program.  ACS shall monitor the length of time each Class Member spends on the wait list once the parent has been referred to the Parenting Skills Program.  ACS will make best efforts to provide that (a) Class Members referred to the Parenting Skills Program are scheduled into the next available intake appointment, or, if the program capacity is filled, the following vacancy available; and (b) no Class Member will be scheduled to begin the group Parenting Skills Class more than one full class cycle (each of which lasts ten

18

weeks) from the time they are referred to the Parenting Skills Training Program, meaning that the wait time for attending a group Parenting Skills Class should never be or exceed twenty weeks.

78.    If a Class Member is referred to the Parenting Skills Training Program and identified as potentially benefitting from one or more parenting skills training services, including one-on-one parenting skills coaching, those services should begin as soon as possible after the referral, even if the Class Member is placed on a waitlist to begin the Parenting Skills Classes. ACS shall monitor the amount of time that Class Members who have been identified as potentially benefiting from the one-on-one parenting skills coaching service wait to begin receiving this service.  ACS shall make best efforts to provide that no Class Member referred to one-on-one parenting skills coaching waits more than four (4) weeks for the service to begin.

79.    Class Members referred to one-on-one parenting skills coaching may also request that their coach attend visits scheduled between the Class Member and their children.

80.    ACS shall require that the contractors providing the Parenting Skills Training Program complete progress reports on a monthly basis for each Class Member enrolled in the program.  At a minimum, these progress reports shall include:

> (i.)    Skills gained by the Class Member during the prior month;
>
> (ii.)   Skills the Class Member is still working on; and
>
> (iii.)  A summary of any observation between the Class Member and child(ren).

81.    Throughout the Continuing Jurisdiction Period, ACS shall maintain on its website notice of the availability of the Parenting Skills Training Program.  On a quarterly basis throughout the Continuing Jurisdiction Period, ACS shall send an eblast to all Foster Care Agencies, Prevention Services Agencies (including Homemaking Services Agencies), and FCLS attorneys

containing a reminder that the Parenting Skills Training Program exists and a link to the notice on ACS's website.

82.     The DDU shall provide informational sessions at least ten times per year for its liaisons in Prevention Services Agencies (including Homemaking Services Agencies) and Foster Care Agencies.  These informational sessions shall include:

      a.      Trainings and workshops on topics including, but not limited to, working with parents with intellectual and developmental disabilities, and resources available to such parents;

      b.      Semiannual reminders of the requirements of the Americans with Disabilities Act, including

           (i.)     the requirement that Class Members receive Tailored Services to address their needs,

           (ii.)    the requirement to provide reasonable accommodations, along with examples of specific accommodations that may be required for Class Members, and

           (iii.)   provision of a copy of the ACS ADA Procedure;

      c.      Semiannual overviews of the services available through OPWDD and the OPWDD application process; and

      d.      Regular reminders of the Parenting Skills Training Program's availability and how to refer parents for those services.

83.     The DDU shall allot time during each of its monthly informational sessions for the liaisons to ask questions of the DDU staff.

84.     By the Effective Date, ACS will require that all Prevention Services Agencies (including Homemaking Services Agencies) and Foster Care Agencies designate at least one liaison to the DDU to attend the informational sessions described above, and will distribute notices to those Agencies apprising them of each upcoming informational session, and encouraging them to attend.

**D.     ACS Reasonable Accommodation Procedures for Class Members**

85.     By the Effective Date, in addition to ACS's existing ADA Procedure, ACS shall implement a pilot Individual Relief Process ("IRP") for escalating the concerns of any Class Member about any alleged discrimination by anyone at ACS or by any Provider Agency in connection with a Class Member's known or suspected I/DD, or concerns regarding the sufficiency of services or reasonable accommodations to enable the Class Member (i) to comply with or participate in programs intended to assist in reunification or increased Family Time or (ii) to avoid unnecessary removal.

86.     If a Class Member who wishes to raise such concerns does not have an open Family Court child protective case, the Class Member should raise those concerns through the ACS ADA Procedure.

87.     If a Class Member who wishes to raise such concerns does have an open Family Court child protective case, the Class Member should use the following IRP:

a.     The Class Member's Family Court attorney (or, if unrepresented, the Class Member) shall make a good faith effort to resolve any concerns described in Paragraph 85, above, by communicating with the FCLS attorney assigned to the case.

b.     If the Class Member's efforts prove unavailing, the Class Member's attorney (or, if unrepresented, the Class Member) may escalate that inquiry

by emailing the FCLS attorney assigned to the case and copying the FCLS Borough Chief and the Director of the FCLS Legal Compliance Unit.  The subject line of that email will state "Josefina S. v. the City of New York" and the ACS case number.  The body of the email will include the Class Member's name, child's name, child's date of birth, and a description of the concerns.

c.   Within ten (10) business days of receipt of the email inquiry, or within three (3) business days in the event of an imminent or emergency removal (except if conditions do not permit for a review and response within three business days), the FCLS Director of Legal Compliance or designee will review the email and will respond to the Class Member's Family Court attorney, copying the FCLS attorney and the FCLS Borough Chief.  In the response, the Director of Legal Compliance or designee will propose a way to resolve the concerns and an expected timeline for the same.

88.   In the event a Class Member's attorney or Class Member who is not represented by an attorney directs a concern to the FCLS attorney assigned to their case when, under the above provisions, the Class Member should have invoked the ACS ADA Procedure, or vice versa, the FCLS attorney or recipient of the ACS ADA Procedure complaint shall promptly forward the concern to the appropriate addressee.

89.   By the Effective Date, ACS shall post on ACS's website information about the availability of the IRP.  ACS shall also post on its website information about the process for attorneys from Legal Services Providers to notify ACS of the identity of possible Class Members, as discussed in Paragraph 62.

90.     The IRP will be implemented for an initial pilot period of 120 days (extendable by mutual agreement of the Parties).  ACS shall have the right, at the end of the initial pilot period, to put in place a different process for reviewing concerns previously reviewed by the IRP, subject to a new 60-day pilot period.  At the conclusion of the above process, if either Party wishes to change any part of the IRP or the process ACS substituted therefor in the second pilot period, it shall so notify the other Party in writing and the Parties shall meet and confer within thirty (30) days to discuss the requested change.  The original process shall remain in place until the Parties have reached agreement on the requested change.  Any resulting agreed-upon process shall thereafter remain in place throughout the Continuing Jurisdiction Period.  If either Party wishes to change any part of the IRP thereafter within the Continuing Jurisdiction Period, it shall so notify the other Party in writing and the Parties shall meet and confer within thirty (30) days to discuss the requested change.  The existing process shall remain in place until the Parties have reached agreement on the requested change.

91.     Any Class Member or their Family Court Attorney may contact Class Counsel about potential violations of this Stipulation at any time.  If, after receiving information from Class Members or their Family Court attorneys, Class Counsel believes there has been a systemic violation of this Stipulation, Class Counsel shall contact counsel for the Defendant.  Upon such contact, Defendant's counsel will investigate and respond to Class Counsel within ten (10) business days.  In its response, Defendant will explain either why ACS believes that a systemic violation has not occurred, or how ACS plans to resolve the systemic violation and the expected timeline for the same.  If the nature and complexity of the systemic violation alleged by Plaintiffs' counsel requires more time for response, Defendant's counsel will so indicate in an interim

response to Plaintiffs on or before the end of the ten-day response period, explaining why more time is needed and providing the date by which it will provide a substantive response.

92.     Nothing in this Stipulation shall preclude a Class Member or their Family Court attorney from seeking any relief from the Family Court before, during, or after their use of the IRP.

### E. Periodic Meetings

93.     Class Counsel and key staff from ACS along with Defendant's counsel shall meet quarterly for the first year of the Continuing Jurisdiction Period and every six (6) months for the remainder of the Continuing Jurisdiction Period.

94.     Plaintiffs shall provide Defendant a list of agenda items at least 10 business days in advance of each meeting. This meeting requirement does not preclude the Parties from meeting additionally to discuss emergencies affecting a significant portion of the Class, if and when they may arise.

95.     During these meetings, the Parties will discuss systemic issues, if any, that have arisen relating to Class Members to determine whether such issues can be resolved without the need for further litigation.

96.     In the event that there are specific issues that cannot be adequately presented or resolved by Class Counsel alone, attorneys from the Institutional Advocacy Organizations and 18(b) attorneys may be invited to attend these meetings, with prior approval from ACS and Class Counsel, to present or discuss systemic issues arising from their cases. Defendant reserves the right, in the interest of efficiency and productivity, to limit the number of non-party entities or representatives from each non-party entity attending such meetings. Should the Parties disagree about the inclusion of proposed non-party attendees at a periodic meeting, the Parties shall meet and confer by telephone at least five (5) business days before the scheduled meeting to attempt to resolve the disagreement.

97.     At least ten (10) business days in advance of each of these meetings, ACS shall provide Class Counsel with the documents required in Part IV ("Monitoring").

### F.     Parent Resource Manager

98.     ACS shall employ a Parent Resource Manager, who shall be a DDU employee with the following responsibilities:

   a.   Design and execute comprehensive trainings for internal and external stakeholders/agencies/organizations regarding parents with I/DD, reasonable accommodations, related services, supports, and resources for appropriate permanency goals and service needs planning;

   b.   Provide I/DD related technical assistance; general and specific consultation for Foster Care Agencies and other external stakeholders as well as other units within OCFH;

   c.   Develop written processes for interactive work and technical assistance to support and guide ACS's stakeholders who serve the I/DD population.

   d.   Assist various divisions and work units in developing new policies and modifying existing ones to effectively respond to the above.

   e.   Assist the DDU Director in developing and implementing I/DD related policy and protocols.

   f.   Serve as an I/DD liaison to external agencies on related issues and services including representing ACS in community-based meetings and conferences and determine areas of collaboration.

   g.   This individual may also either attend FTCs or MDT Meetings, or work with the other members of the DDU staff tasked with attendance.

### G.     Training

99.     As of the Effective Date, ACS's Workforce Institute shall maintain (i) an online e-Learning module and (ii) a live Instructor Led Training (virtual or in person) addressed to working with parents with intellectual and developmental disabilities.  These trainings shall cover, at a minimum, identifying parents with I/DD (including, if possible, use of the *Josefina S.* Indicator once adopted in CONNECTIONS), strengths and limitations of parents with I/DD, dispelling myths about parents with I/DD, how to advocate for parents with I/DD, and identifying appropriate

supports for parents with I/DD.  The e-Learning module on I/DD shall incorporate key information from the Connecticut Parents with Cognitive Limitations Workgroup (CPCLW) as of the Effective Date.  The live Instructor Led Training (virtual or in person) will incorporate key information from the CPCLW within one year of the Effective Date.

100.    The e-Learning module and any slides or handouts accompanying the Instructor Led Training will cover, at minimum, the topic areas identified in the prior Paragraph, with a similar or greater level of detail to the materials shared with Plaintiff's counsel in March 2023.

101.    ACS shall include the e-Learning module as mandatory onboarding training for all staff who interact with parents, including all new CPS, CPS Supervisor Level I and Level II staff in the Division of Child Protection, and staff, including supervisors, who interact with parents in the Division of Family Permanency Services and the Division of Prevention Services.  The onboarding training for new CPS, CPS Supervisor Level I and CPS Supervisor Level II staff who interact with parents shall be completed within one year of the new staff's start date at ACS.

102.    ACS shall designate the e-Learning module as "mandatory" for all Division of Family Permanency Services, Division of Prevention Services, Foster Care Provider Agencies, Prevention Services Agencies (including Homemaking Services Agencies) staff, including supervisors, that interact with parents or supervise those who interact with parents.

103.    Within eighteen months of the Effective Date, ACS shall ensure that all active Child Protective Specialists and CPS Supervisor Level I and Level II staff have completed the e-Learning module.  Within two years of the Effective Date, ACS shall ensure that all other active staff for whom the e-Learning module is "mandatory" have completed the e-Learning module.

104.    Notwithstanding the above deadlines for completion of the e-Learning module, all staff who are assigned to a new or existing case involving a Class Member, or an existing case that

26

is newly designated as involving a Class Member, shall be mandated to complete the e-Learning module within three months of that assignment.  The communication described in Paragraph 117 shall direct such staff to complete the training.  ACS shall maintain a process by which any ACS supervisor in their discretion may mandate that any ACS staff under their supervision, or Foster Care and Prevention Services Agencies (including Homemaking Services Agencies) under their supervision, complete the e-Learning module or Instructor Led Training.  ACS shall mandate that any ACS staff or Foster Care and Prevention Services Agencies (including Homemaking Services Agencies) staff who has been the subject of a complaint under the IRP described in Paragraph 85 complete the e-Learning module or Instructor Led Training, unless they have already completed such training or there was a determination that the complaint under Paragraph 85 was baseless.

## IV.   MONITORING

105.    At the end of each Monitoring Period, for the duration of the Continuing Jurisdiction Period, ACS will provide a report ("Monitoring Report" or "Report") to Class Counsel setting forth the information described in this Section. ACS will provide each Monitoring Report within one month of the end of each Monitoring Period.

106.    Unless otherwise indicated or agreed to by the Parties, the information in the Report shall be provided in anonymized form, with all personally identifying information of Class Members and their children redacted. Information shall be identified by ACS Case Number.

107.    As part of each such Report, ACS shall provide the following information about each Class Member referred to the Parenting Skills Training Program:

> a.    The Class Member's name and case number, either in anonymized format or including personal identifying information, provided that the Court's Final Approval Order directs that doing so does not constitute a violation of ACS's obligations to protect the private information of Class Members;

b.   The name of the entity that was the source of the Class Member's referral (*e.g.*, the name of the Foster Care Provider Agency, Prevention Services Agency, ACS office, family attorney office, or other), and the referral date;

c.   For Class Members who have begun receiving services: the service provider, and number of sessions attended;

d.   For Class Members who were or are placed on the wait list for any Service, the date each was placed on the wait list and length of time each was on the wait list as of the date of the Report; and

108.   As part of each such Report, ACS shall provide a list of all requests for Reasonable Accommodation made by Class Members pursuant to the ACS ADA Procedure that are received by the ACS ADA Coordinator/Office of Equal Employment Opportunity, and regardless of whether the request uses the term "Reasonable Accommodation," and regardless of the agency that initially received the request for the Reasonable Accommodation (i.e., either ACS or a Foster Care Provider Agency or a Preventive Services Agency), including the dates on which those requests were made; the resolution of each request; and the resolution date.

109.   As part of each such Report, ACS shall provide a list of all complaints raised via the IRP that were escalated under Paragraph 87, the nature of the concern that led to the escalation, the date on which the escalation occurred, the individual at ACS who reviewed the escalation, the date the escalation was resolved, and the outcome of the escalation.

110.   As part of each such Report, ACS shall provide the following:

a.   The dates on which ACS sent an eblast to all Foster Care Agencies, Prevention Services Agencies (including Homemaking Services Agencies), and FCLS attorneys containing a reminder that the Parenting Skills Training

28

Program exists and a link to the notice on ACS's website, and a copy of the eblast; and

  b. The records of attendance and dates of informational sessions, including trainings and workshops, led by DDU for liaisons in Prevention Services Agencies (including Homemaking Services Agencies), and Foster Care Agencies.

111. As part of each such Report, ACS shall provide the number of staff at ACS and at Provider Agencies who have taken the training described in Paragraphs 99-104 including the dates on which each staff member completed the training, as well as the approximate total number of staff at ACS and, in the aggregate, at all Preventive and all Foster Care Provider Agencies, City-wide, who are mandated to complete the training at the point in time that each Report is created, as described in Paragraphs 101-104.

112. As part of each Monitoring Report, ACS will provide Class Counsel with data exported from CONNECTIONS regarding each Class Member for whom the CONNECTIONS *Josefina S.* Indicator, the "Development Disabled – Diagnosed" indicator, or the "Intellectual Disability – Diagnosed" indicator is checked. The report will include such readily aggregable data from CONNECTIONS as to which the Parties hereafter agree. The data will be provided on an anonymized individual-by-individual basis, provided that the Court's Final Approval Order directs that doing so is necessary to enable Plaintiffs' Counsel to monitor compliance with the terms of this Stipulation and does not constitute a violation of ACS's obligations to protect the private information of Class Members. ACS will also provide average or otherwise aggregated comparative data for all open ACS cases that do not involve Class Members.

113.     As part of each Monitoring Report, ACS will provide, on an anonymized basis, summary reports in a format similar to the sample shared with Class Counsel in May 2023 for all cases involving Class Members that are in the PAMS/ZBR Sample.  These summary reports will provide aggregated information for questions or domains in the PAMS/ZBR review tools for Class Members, and for the full sampled population, with the details of the reports to be determined by agreement of the Parties.

a.     ACS will determine if the PAMS/ZBR Sample includes a sufficient number of cases to constitute a statistically significant number for purposes of quality assessment of case practice involving Class Members by providers at a citywide level.  Along with its Report, ACS will provide a description of the standard and calculations it used to determine statistical significance for this purpose (including margin of error, total population size, standard deviation, and confidence level).

b.     If the PAMS/ZBR Sample does not meet the criteria of statistical significance for these purposes, ACS will conduct a targeted review to determine, by matching cases with a *Josefina S.* CONNECTIONS Indicator against the DDU Spreadsheet, whether any/all adults identified by the *Josefina S.* Indicator had been referred to DDU for consideration for the Parenting Skills Training Program.  If Class Counsel believes that they need additional information regarding case practice for Class Members and compliance with this Stipulation, the Parties will meet and confer in good faith to discuss additional steps ACS could take that would provide Class

Counsel with adequate information while ensuring that excessive administrative burdens are not placed on ACS.

c.   If a case sampled for PAMS review does not have the CONNECTIONS *Josefina S.* Indicator selected, but the PAMS reviewer determines, during the review, that the case does involve a Class Member, the reviewer will inform the relevant providers of that fact in an email

d.   If a case sampled for PAMS or ZBR review does not have the CONNECTIONS *Josefina S.* Indicator selected, but the PAMs reviewer determines that the case does involve a Class Member, the case will be counted as a Class Member in determining Class Member representation in the review sample.

e.   The Parties acknowledge that, depending on when the CONNECTIONS *Josefina S.* Indicator is implemented, it is possible that during the first Reporting Period(s), only a small portion of actual Class Members will be indicated by the CONNECTIONS *Josefina S.* Indicator, the "Development Disabled – Diagnosed" indicator, or the "Intellectual Disability – Diagnosed" indicator. In that event, the Parties will meet and confer in good faith to determine what steps ACS will take to provide Class Counsel with adequate information regarding case practice for Class Members and compliance with this Stipulation, while ensuring that excessive administrative burdens are not placed on ACS.

114.   Every case randomly selected for PAMS or ZBR review that involves a Class Member will be audited using the PAMS/ZBR review tools as modified by agreement of the

Parties. The additions or modifications to be agreed upon by the Parties will address issues related to actual or suspected I/DD and adherence to obligations imposed by this Stipulation.

115. If, following the review of any Monitoring Report, Class Counsel believe they need additional information to evaluate ACS's compliance with this Stipulation, including, without limitation, unredacted Class Member information or information from the Notes fields of CONNECTIONS, Class Counsel shall make that request in writing and explain the basis of the need. If ACS objects to the request, the Parties will meet and confer. Plaintiffs' Counsel's entitlement to the above information is conditioned on the Court's Final Approval Order directing that the provision of such information to Plaintiffs' Counsel is necessary to monitor compliance with the terms of the Stipulation and does not constitute a violation of ACS's obligations to protect the private information of Class Members.

116. On a quarterly basis, until OCFS has implemented the CONNECTIONS *Josefina S.* Indicator, ACS shall work with OCFS to provide Class Counsel an estimated date by which the CONNECTIONS I/DD Indicator will be implemented.

117. Within three months of implementation of the CONNECTIONS *Josefina S.* Indicator, ACS will implement a process to provide notice to all relevant staff about the use of the Indicator, including, *inter alia*:

> a. Reinforcing that all relevant staff check the CONNECTIONS *Josefina S.* Indicator for cases involving Class Members required to be documented in CONNECTIONS, by sending eBlasts, bulletins, announcements, or other communications to relevant ACS staff, Foster Care Agencies, and Prevention Services Agencies (including Homemaking Services Agencies),

                     requesting that they identify Class Members and check the CONNECTIONS *Josefina S.* Indicator;

    b.    Including directions to staff as part of the Instructor Led Training and, to the extent possible, the e-Learning module, *see* Paragraph 104; and

    c.    Directing ASAP reviewers to inform the CPS team when they have identified any reviewed case as involving Class Members for which the CONNECTIONS *Josefina S.* Indicator is not checked.

## V.   RELEASES

118.    Upon the Court's final approval of this Stipulation of Settlement, Class Members release Defendants from any and all systemic claims that were or could have been brought in this Action, which arise from, relate to, or are based on the allegations in the Complaint, and are related to systemic violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 as to the Class Members as defined herein.

119.    For the duration of the Continuing Jurisdiction Period, Class Members are prohibited from commencing any action in any judicial or administrative forum asserting any claims that were or could have been brought in this Action, which arise from, relate to, or are based on the allegations in the Complaint, and are related to systemic violations of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 as to the Class Members as defined herein.

120.    Notwithstanding the prohibitions set forth in Paragraph 119 above, nothing in this Stipulation of Settlement shall prevent any Class Member from seeking and/or litigating whether reasonable efforts were made, pursuant to Articles 10 or 10-A of the Family Court Act, or from asserting any individual, non-systemic claim in any judicial or administrative forum.

## VI.    CONTINUING JURISDICTION

121.    The terms and conditions of this Stipulation shall be deemed effective, and the Parties' obligations, rights, and responsibilities hereunder shall commence, upon the Effective Date, which is the date of filing of an order or judgment approving this Stipulation becoming final. "Final" for purposes of the order or judgment approving this Stipulation in accordance with Rule 23(e) of the Federal Rules of Civil Procedure shall mean the latter of (i) the thirty-first day after such order or judgment is entered, if no notice of appeal is timely filed; or (ii) the first day on which the order or judgment is not subject to further judicial review or appeal, if any such notice of appeal is timely filed.

122.    As of the Effective Date, the jurisdiction of this Court shall terminate for all purposes except that the Court shall maintain continuing jurisdiction for the purpose of enforcing the terms of this Stipulation and for adjudicating any fee request.

123.    Any and all rights, duties, and obligations created by this Stipulation will expire at the end of the Continuing Jurisdiction Period, which is three (3) years after the Effective Date, except as may be extended as set forth immediately below.

124.    Any Party to this Stipulation may move this Court for an order extending the Continuing Jurisdiction Period; provided, however, that no motion for an extension shall seek an extension term of more than one year from the then-applicable termination of the Court's jurisdiction.

125.    A motion for such extension must be made no later than 60 days before the scheduled termination of the Continuing Jurisdiction Period unless, all Parties consent to another date.  In no event shall the Continuing Jurisdiction Period be extended beyond five (5) years after the Effective Date.

126.     Prior to filing a motion for extension of the Continuing Jurisdiction Period with the Court, the Parties shall meet and confer to address the bases for the proposed extension motion. The Party seeking the extension must request the meet and confer at least 30 days prior to seeking relief from the Court, and the meet and confer must be held within 10 days of such request.

## VII.     ENFORCEMENT

127.     Prior to seeking judicial enforcement of this Stipulation, Plaintiffs shall provide Defendant with written notice of the specific basis for the purported non-compliance.  The Parties shall thereafter promptly attempt in good faith to resolve the matter without the need for judicial intervention.

128.     In the event that the Parties are unable to resolve a dispute regarding purported non-compliance with the terms of this Stipulation within thirty (30) days of the sending of written notice, Plaintiffs may move the Court to enforce the Stipulation.

129.     In the event of any motion for systemic relief based upon Defendant's alleged non-compliance with the substantive requirements of this Stipulation, Defendant shall be deemed as being in compliance therewith unless Plaintiffs establish that Defendant's failures or omissions to meet the terms of the Stipulation were not minimal or isolated, but were substantial and sufficiently frequent or widespread as to be systemic.

130.     Notwithstanding the above provisions, Plaintiffs may move this Court for an order for all appropriate relief without waiting thirty (30) days if Plaintiffs' motion is based in whole or in part on information received by Plaintiffs less than thirty (30) days before the date that the Continuing Jurisdiction Period is due to end.

131.     During the Continuing Jurisdiction Period, counsel for ACS will give Class Counsel written notice of any proposed substantive change in policies and procedures set forth in this Stipulation of Settlement at least 30 days prior to implementation of such change, unless issued

35

by or in furtherance of a change in regulation or guidance of the State or federal government issued by those entities with immediate or retroactive effect, in which case ACS will give notice as soon as ACS learns that the change required by the State or federal government will become effective; including, but not limited to, (a) any such change required by intervening changes in federal or state statute or regulation, or state administrative directives or policies, that are inconsistent with the terms of this Stipulation; or (b) any such change due to substantial reductions in ACS's budget. If Class Counsel does not object to the proposed change as contrary to this Stipulation within fourteen days of the notice, ACS may immediately implement the change.  If Plaintiffs object to the proposed change as contrary to this Stipulation of Settlement by written notice to ACS within fourteen (14) days of the notice, the Parties will meet and confer to resolve the issue provided, however, that the Parties acknowledge that ACS may be unable to alter changes mandated by State or federal entities.

132.    After meeting and conferring, if Class Counsel still objects to the grounds asserted by ACS as the basis for a change to this Stipulation as described above, Plaintiffs may apply to the Court to stay or modify the proposed change, but, unless a temporary stay is sought and granted, the City may implement the contested change.

## VIII.  ATTORNEYS' FEES

133.    The Parties shall attempt to negotiate an agreed proposed award to Plaintiffs' of attorneys' fees and costs pursuant to 42 U.S.C. § 12205.  If the Parties have not agreed to such a proposed award by the date of the Fairness Hearing, Plaintiffs' Counsel shall make any request for fees pursuant to 42 U.S.C. § 12205 and Federal Rule of Civil Procedure 23(h) within ninety (90) days of the Effective Date.  Defendant does not contest Plaintiffs' entitlement to fees under 42 U.S.C. § 12205, but reserves the right to oppose the amount of fees sought in any such application.

## IX.     GENERAL MATTERS AND RESERVATIONS

134.     **Entire Agreement.**  This Stipulation of Settlement constitutes the entire agreement between and among the Parties with respect to the compromise and settlement of the Litigation and all other above-mentioned disputes and differences and supersedes any and all prior agreements or negotiations of the Parties, whether oral or in writing, with respect to the subject matter of this Stipulation of Settlement.

135.     **Modifications**. Any date set forth herein may be extended by mutual written agreement of all Parties, through their counsel, by e-mail stipulation.  This Stipulation of Settlement may not otherwise be amended, changed, modified, superseded, altered or canceled, and the terms and conditions hereof may not be waived, except by a written instrument signed by each of the Parties expressly stating that it is intended to amend, change, modify, supersede, alter or void this Stipulation of Settlement.

136.     **Severability**. If any provision of this Stipulation of Settlement is held to be or becomes invalid or unenforceable under the law of any jurisdiction, the remainder of the Stipulation of Settlement shall remain in effect and with full force.  It is the intention of the Parties that this Settlement Stipulation should be enforceable and that the elimination of any part shall not affect the enforceability of the remainder of the Stipulation of Settlement.

137.     **Interaction with federal, state, and local laws.** Nothing herein shall constrain Defendant from complying with any current or future controlling provisions of federal, state, or local law and/or guidance; or from making any changes to ACS programs, resources, etc., referred to in this Stipulation that do not materially alter any rights or obligations set forth herein.

138.     **No Liability.** Defendant denies any liability whatsoever to Plaintiffs.  Nothing in this Stipulation and Order of Settlement shall be deemed to be a finding or admission that

37

Defendant has in any way violated Plaintiffs' rights under the constitutions, statutes, ordinances, rules, or regulations of the United States, the State of New York, or the City of New York.

139.    **Force Majeure.** If Defendant is unable to meet a deadline or other requirement set forth in this Stipulation due to causes beyond Defendant's control (a "Force Majeure Event"), Defendant's failure shall not be deemed a basis for finding Defendant out of compliance with the terms of this Stipulation.  Should Defendant invoke this Paragraph, Defendant shall notify Class Counsel in writing as soon as practicable, but not later than 20 days after Defendant knows such Force Majeure Event will cause Defendant to fail to satisfy a term of this Stipulation, providing a description of the event and notice of the length of the delay ("Force Majeure Notice").  Defendant will adopt all reasonable measures to avoid or minimize any such delay.

140.    **No Reliance**. The Parties represent and warrant that (i) they have had reasonable opportunity to consult with counsel, have consulted with counsel regarding the terms of this Stipulation of Settlement and its execution, and have read and understand all provisions of this Stipulation of Settlement, (ii) they have freely and voluntarily entered into this Stipulation of Settlement with an intent to bind themselves to its terms, and (iii) no promises or representations were made to them by any person to induce them to enter into this Stipulation of Settlement (other than the express terms set forth herein).

141.    **Construction**. This Stipulation of Settlement has been negotiated and drafted by the Parties and their respective counsel and shall not be construed in favor of, or against, any Party on the basis of its having been drafted by that Party.  Each Party agrees that, in interpreting and applying the terms and provisions of this Stipulation of Settlement, no Party shall be deemed the drafter of any provision, no presumption shall exist or be implied for or against any Party as a

result of who drafted any provision, and any uncertainty or ambiguity in this Stipulation of Settlement shall not be interpreted against any Party.

142.   **Counterparts**. This Stipulation of Settlement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

143.   **Headings**. The headings designated in this Stipulation of Settlement are solely for descriptive purposes and do not serve to alter, modify, detract from or add to the substantive terms of this Stipulation of Settlement.

**NEW YORK LEGAL ASSISTANCE GROUP**
**LISA RIVERA, ESQ.**

By: _____
       Elizabeth Jois, of counsel
       Danielle Tarantolo, of counsel
       Genesis Miranda, of counsel
100 Pearl St., 19th Floor
New York, NY 10004
Telephone: (212) 613-5093
Facsimile:  (212) 714-7575
Email:  ejois@nylag.org

Dated:        January ___29___, 2024
              New York, New York

**DAVIS POLK & WARDWELL, LLP**

By: _____
       James H.R. Windels, counsel
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email: james.windels@davispolk.com

Dated:        January ___29___, 2024
              New York, New York

*Attorneys for Named Plaintiffs and Class Members*

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the City of New York
*Attorney for Defendant The City of New York*
100 Church Street
New York, New York  10007
Telephone:  (917) 370-3015
Email:  ipines@law.nyc.gov

By:  _____
     Jonathan Pines
     Assistant Corporation Counsel

Dated:      January 29, 2024
            New York, New York


**SO ORDERED:**

_____        1/30/2024
     Honorable Valerie E. Caproni
     United States District Judge